UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN SIMPKINS                              CIVIL ACTION NO. 13-cv-0430

VERSUS                                     JUDGE WALTER

BURL CAIN                                  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

John Simpkins ("Petitioner") was charged in Webster Parish with aggravated rape, aggravated incest, molestation of a juvenile, and sexual battery, all related to his repeated sexual abuse of his stepdaughter. A jury convicted him on all four counts, and he received lengthy sentences. The state appellate court vacated the aggravated rape conviction and entered in its place a conviction for forcible rape. The court remanded for sentencing for that crime, and it also remanded for new sentences on sexual battery and molestation because of perceived errors committed in the trial court. State v. Simpkins, 12 So.3d 1021 (La. App. 2d Cir. 2009), writ denied, 27 So.3d 296 (La. 2010) and 28 So.3d 1004 (La. 2010).

Petitioner next pursued a post-conviction application that raised four claims. The lower courts denied relief on all of the claims, but the State conceded before the Supreme Court of Louisiana that Petitioner was correct that his life sentence for molestation of a juvenile was unlawful; the appellate court had incorrectly ruled that a new version of the

statute with a harsher sentence applied. The Supreme Court reinstated the original 10-year sentence. State ex rel. Simpkins v. State, 102 So.3d 776 (La. 2012).

Petitioner now seeks federal habeas corpus relief on two claims. He argues that there was (1) insufficient evidence and lack of legal authority for the appeals court to impose the lesser conviction of forcible rape and (2) the State violated the Double Jeopardy Clause by relying on the same evidence to attempt to convict him of both aggravated rape and aggravated incest. For the reasons that follow, it is recommended that the petition be denied.

**Background Facts**

Petitioner, his wife, and three children moved from Texas to Webster Parish in 2002. The children included F.M.S. (the victim), who was 12 when the family moved to Louisiana. F.M.S. was not the biological child of Petitioner, but she believed she was until after she reported these crimes.

The family's trailer home was cluttered with garbage and debris. The family slept on the floor in the same bedroom. There was evidence that Petitioner bought lingerie for his wife and F.M.S. and had them dance for him in the garments. Three witnesses said Petitioner habitually walked around naked in front of the family.

F.M.S., who was 17 by the time of trial, testified that the abuse started when she was eight years old and the family lived in Mississippi. She said Petitioner walked in her room and began taking off her clothes. She started crying and whimpering and trying to get away, but he "started choking me." When she would cry out, he "started smacking me and telling

me to shut up and that if anybody heard me he'd take me someplace where nobody could find me, dig a hole, and bury me alive."

F.M.S. testified that Petitioner continued to have sex with her "maybe once, twice a week," increasing as she got older. The acts included vaginal, oral, and anal intercourse. Petitioner told her that anal sex was his way of punishing her. F.M.S. testified that her younger sister saw them having sex once and said, "I'm telling momma." F.M.S. said that Petitioner looked at her and said, "If she tells, I will strangle her." F.M.S. then managed to stop her sister from telling their mother. This event happened in Webster Parish.

F.M.S. testified that she was scared of Petitioner and that he was the type of person who, if mad, would smack her or pick up something and throw it at her, or even threaten to kill her. In addition to the threat to strangle the younger sister, Petitioner threatened to take F.M.S.'s younger brother "out in the yard and beat him like a full-grown man." F.M.S. said that he also threatened to take her "where nobody could find me and bury me alive, or he'd threaten to beat me." He once told her that if she or her mother ever tried to leave that he would "nail our feet to the floor and burn the house down around us." F.M.S. finally decided to come forward and report the abuse because she was afraid the same thing would happen to her younger sister.

**Forcible Rape Conviction**

    **A. Procedural History**

The court charged the jury with aggravated rape under La. R.S. 14:42, which allows a conviction on a variety of theories. The court charged only one theory, which allowed a

conviction where the intercourse is deemed to be without lawful consent of the victim because it is committed when the victim is under the age of 13 years. The jury was not charged with a prong of the statute that allows conviction when the victim is prevented from resisting by the act of threats of great and immediate bodily harm, accompanied by apparent power of execution.

The state appellate court noted, sua sponte, that the court had incorrectly charged the jury with the then-current version of the statute that required the victim be under the age of 13. The statute in effect at the time of the crimes that were charged required that the victim be under the age of 12. The court carefully reviewed the testimony about the age of the victim at the relevant times and determined that the evidence was insufficient to show that the family lived in Louisiana prior to the victim's twelfth birthday. Thus, there was insufficient evidence to show that aggravated rape, under the prong of the statute that depends on the age of the victim, was committed in Louisiana.

The appellate court then turned to La. C. Cr. P. art. 821(E), which provides that if an appellate court finds that the evidence supports only a conviction of a lesser included responsive offense, the court may modify the verdict and render a judgment of conviction on the lesser offense. The court looked to forcible rape, La. R.S. 14:42.1, which the jury had been instructed was a lesser responsive verdict for aggravated rape. Forcible rape is defined as when the intercourse is deemed to be without the consent of the victim because it is committed under circumstances that include when the victim is prevented from resisting by force or threats of physical violence under circumstances where the victim reasonably

believes that such resistance would not prevent the rape. The appellate court found that this crime was "clearly proven beyond a reasonable doubt" based on the testimony of threats to the life of the victim and her sister in conjunction with Petitioner's demands for intercourse. The forcible rape conviction was entered.

Petitioner argues that it was a due process violation for the state appellate court to enter a conviction of the lesser charge of forcible rape because (1) there was no evidence the victim was prevented from resisting by force or threats of physical violence and (2) the court violated jurisprudence such as Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). When Petitioner presented this claim in his post-conviction application, the trial court referred to the state appellate court's decision and held that Petitioner was not entitled to relitigate the issue in post-conviction. The state appellate court did not rely on any procedural objection. Rather, it issued a three-sentence ruling on all of the claims in the application that, "[u]pon the showing made, the exercise of this Court's supervisory jurisdiction is not warranted." The case then went to the Supreme Court of Louisiana, which granted relief on a sentencing issue and ended its opinion by stating: "Relator's remaining claims, however, lack merit and the application is otherwise denied."

### B. Sufficiency of the Evidence

Petitioner's basic challenge to the sufficiency of the evidence is assessed by asking whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The appellate court on direct

appeal, and the Supreme Court of Louisiana in its summary post-conviction denial, rejected the claim that the evidence was insufficient to support the forcible rape conviction.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state appellate court addressed the issue in some detail, but the later decision from the Supreme Court gave only a summary denial. This court must nonetheless afford the deference required by Section 2254(d) because it "applies even when there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).

The victim herself testified that Petitioner used force, such as anal intercourse for punishment, and threats of physical violence against her and her sister to prevent the victim from preventing or reporting his acts. A rational trier of fact could have found from that testimony that F.M.S. was prevented from resisting by force or threats of physical violence under circumstances where she reasonably believed that such resistance would not prevent

the rape. The state courts assessed that evidence and reached a reasonable decision that there was sufficient evidence to support the conviction. Habeas relief is not, therefore, available under this theory.

### C. Apprendi Argument

The other prong of Petitioner's attack on the forcible rape conviction cites Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), which applied the principle that a criminal defendant is entitled to "a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Id. at 2356. Apprendi applied that rule in the setting of whether a judge could increase a sentence based on facts he found but that had not been presented to the jury. Its holding was: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-63.

Petitioner, to obtain relief, must show that the state court's decision was contrary to or an unreasonable application of clearly established Federal law as established by the Supreme Court. Such law, for purposes of § 2254(d), includes only the holdings, as opposed to the dicta, of Supreme Court decisions. White v. Woodall, 134 S.Ct. 1697, 1702 (2014). The Court has explained: "A state court's decision is therefore not contrary to our decisions unless its holding contradicts our holdings, or it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Brumfield v. Cain, 135 S.Ct. 2269, 2293 (2015) (internal quotations omitted). An unreasonable application of clearly established federal law happens when the

state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a case. Williams v. Taylor, 120 S.Ct. 1495 (2000); Pape v. Thaler, 645 F.3d 281, 287 (5th Cir. 2011).

The holding in Apprendi, the only Supreme Court authority cited by Petitioner, is not directly applicable to the situation in his case. This is not a case like Apprendi where a sentence was increased based on facts found by the judge at sentencing. This was a case where the appellate court exercised its state law authority to enter a verdict for a lesser responsive verdict after it found the evidence insufficient to support the jury's verdict of guilty of a greater crime. Thus, the holding in Apprendi has no direct application.

Petitioner may argue that the principles discussed in Apprendi should nonetheless apply to this situation, but he cites is no holding from the Supreme Court that has reached that conclusion. On the other hand, the Supreme Court has observed that "federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." Rutledge v. U.S., 116 S.Ct. 1241, 1250 (1996).[1] The Supreme Court also "noted the use of such a practice with approval," Id., citing Morris v. Mathews, 106 S.Ct. 1032, 1037-38 (1986), but said there was "no need for us now to

---

[1] The Fifth Circuit has held that it has such authority when the evidence fails to support one or more elements of the crime of which a defendant was convicted, the evidence sufficiently sustains all elements of another offense, the other offense is a lesser included offense, and no undue prejudice will result. U.S. v. Rojas Alvarez, 451 F.3d 320, 328 (5th Cir. 2006).

consider the precise limits on the appellate courts' power to substitute a conviction on a lesser offense for an erroneous conviction of a greater offense." Rutledge, 116 S.Ct. at 1250

The ability of a petitioner to meet his burden is more difficult when the Supreme Court's decisions "have not been a model of clarity" or "have not established a clear or consistent path for courts to follow." Lockyer v. Andrade, 123 S.Ct. 1166 (2003). Given the federal authorities that follow the same procedure applied in this case, and the absence of a Supreme Court holding that clearly forbids the procedure in this setting, it cannot be said that the state court's imposition of the lesser responsive verdict was contrary to or an unreasonable application of a clearly established holding of the Supreme Court.

**Double Jeopardy**

Petitioner argued in his post-conviction application that he was subjected to double jeopardy when he was charged and convicted of both aggravated rape and aggravated incest based on the same evidence. He conceded before the state trial court that he did not have a claim under the Blockburger test[2] for double jeopardy, but he argued that his convictions ran afoul of the "same evidence" test that some courts also apply.

The trial court rejected the claim because the conviction for aggravated rape had been vacated on appeal. The state appellate and supreme courts summarily denied relief. Petitioner continues to argue in this court that his convictions for aggravated rape and

---

[2]The Supreme Court in Blockburger v. U.S., 52 S.Ct. 180 (1932) stated that the rule is that where the same act or transaction constitutes a violation of two distinct statutes, the test to determine whether there are two offenses or only one, "is whether each provision requires proof of a fact which the other does not." Id. at 182.

aggravated incest violated the Double Jeopardy Clause, even though the aggravated rape conviction has long since been vacated. He admits in his federal brief that the aggravated rape conviction was thrown out and reduced to forcible rape, but he says this "does not change the fact that the same evidence was presented at trial to support both convictions." He contends the Double Jeopardy Clause should have prevented the trial on the aggravated rape claim, which would have precluded the later-imposed responsive verdict of forcible rape.

If Petitioner had raised a successful pretrial double jeopardy argument in the trial court and barred the simultaneous prosecution for aggravated rape and aggravated incest, the State could have amended the charges to the forcible rape and aggravated incest charges on which Petitioner was ultimately convicted. If the State proceeded to trial (as it did) on both of the challenged crimes, and the appellate court had found the evidence sufficient to support the aggravated rape conviction, but it had been persuaded by Petitioner's double jeopardy argument, the remedy would have been to vacate the conviction and sentence of the lesser incest conviction and affirm the conviction and sentence for the more severe aggravated rape offense. State v. Price, 899 So.2d 633, 635 (La. App. 2d. Cir. 2005). The court would not, in either of those scenarios, have forbidden prosecution on or thrown out altogether a rape count, which is what Petitioner asks of the habeas court. He cites no authority for such an extraordinary remedy, and the court is not aware of any. Petitioner was not, in the end, convicted of aggravated rape, and he can not attack his actual convictions based on theories dependent on that count.

As for the "same evidence" argument raised by Petitioner, it was rendered moot when the state courts vacated one of the two challenged convictions. Furthermore, the same evidence test is often employed by Louisiana courts in addition to the federal Blockburger test, but habeas relief is not available on that theory because the Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases. U.S. v. Felix, 112 S.Ct. 1377, 1382 (1992). Habeas relief requires a violation of federal constitutional law; it does not lie for violations of state law or jurisprudential doctrines. Accordingly, the undersigned has not applied the same evidence test in habeas cases. Hampton v. Warden, 2013 WL 5673622 (W.D. La. 2013). Petitioner did not exhaust a claim and does not argue that his actual convictions, for forcible rape and aggravated incest, violate double jeopardy principles. He is not entitled to relief on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of February, 2016.

Mark L. Hornsby
U.S. Magistrate Judge